arguments for the third day. This morning we have five cases set for oral arguments. We'll take them in order and we'll take a break after the third argument, Dale, for your planning purposes. If there aren't any questions, I'm going to call the first case, which is 19-2099 and 2108 Midway Leasing v. Wagner Equipment. And I think Ms. Jones, are you ready to proceed? May it please the court. My name is Alexandra Jones. I represent the appellant Midway Leasing in this appeal. With me in this conference room is my co-counsel Alan Wilson and Mr. D. McCall, who is the principal of Midway Leasing. Our appeal centers around two issues. The first issue is whether the district court properly granted summary judgment against Midway on its breach of contract claim and disposed of it at that time. And the second issue is whether it could use its ruling on its summary judgment to preclude and disregard evidence on Midway's quantum heroin and unjust enrichment claims at trial. With respect to the summary judgment order, the court found that the agreement between Midway and Wagner violated New Mexico's public policy. Wagner had consulted with and retained Midway to assist it in procuring industrial revenue bonds or IRBs, as I'll call them, from the county of Bernalillo. Part of Midway's services was to facilitate communications between Wagner and the county, was also to communicate directly with county officials regarding Wagner's application. The parties then agreed that, as would be customary for a brokerage service and a real estate developer, that he would be paid based on a percentage of the total tax savings that Wagner would enjoy if the votes were secured to pass the IRBs along to Wagner. The IRBs were successful. The district court, however, found that Midway could not bring its breach of contract claim because the percentage fee agreement or contingency fee agreement it found violated New Mexico's public policy. In doing so, it looked towards the New Mexico Lobbyist Regulation Act as a source of that public policy, specifically Section 211.8. 211.8, by its expressed terms, prohibits contingency fees for legislative lobbying only at the state level and for the governor. It does not preclude the type of case. Could we look all the way back to Providence Tool and, one, the New Mexico Armillo case, secondly, to expand that contingency fee ban to local government? Sure, Your Honor. The 1864 Providence Tool case, I think, first of all, I do believe that it was overbroad in the sense that it banned all kinds of compensation for lobbying, for procurement. At that time, it was just considered heinous to be compensated for those types of arrangements. Obviously, over the past century or so, that has substantially changed. I think that when New Mexico enacted the Lobbyist Regulation Act, they took a stand on what New Mexico's position was with respect to legislative lobbying, and they specifically chose to limit it to the state legislature and to the governor. With respect to Armillo, that is- Counsel, does this case proceed on the basis of the statute, or does it proceed on the basis of New Mexico common law? I believe it- Or some other general statement of law regarding public policy of New Mexico. Well, I believe it can proceed on both. I believe it can proceed on common law and statute, but I believe that the decision below was that the statute represented a codification of some type of common law. Does that matter since we're exercising de novo review? In other words, even if we agree with your characterization of the ruling, if we conclude that common law, the principle in Hazleton or Providence Tool has never been overruled, wouldn't we be required to affirm even if the district court had erroneously relied on the statute? I don't think so because I don't think that the prior rulings in these cases prohibit the type of the agreement that was in place here. What about Hazleton? Even if Providence Tool had overbroad language, what about the rather clear language in Hazleton versus Shackles? None of us believe that, particularly in New Mexico, in Ingalls, in the 1927 case, we made it pretty clear that we don't want to hold all contingent compensation as automatically void. I think the case law in the New Mexico Supreme Court in that case was very clear that they wanted to depend on the circumstances of the case, and they specifically found that it was customarily on commission, as Mr. McCall has always done in his 30 years as a real estate broker, and where there's nothing unusual about the transaction, we're not going to automatically hold that just because of the contingent nature of the compensation that it's void. I do think that New Mexico Supreme Court has elaborated on that, and as we've explained in our brief, New Mexico is free to disregard any principles that federal law provides. I think that there's been very clear expressions in both this court, throughout New Mexico courts as well, that the policy expressed in any kind of statute, the limitations in that statute, including limitations of where the scope of where this prohibition applies is just as important as the prohibition itself. In this case, we really do have a situation where the state legislature has granted Bernalillo County, in this case, the authority to promulgate its own ordinances and its own rules regarding political activities. It has done that extensively, and then rather than taking the approach and just concerning apparent conflicts that may occur, it has gone through its code of conduct and outlined in detail activities which they want to restrain. It certainly governs the type of contract that was entered into between the county and Wagner in this case, and I think they've extensively governed any kind of concern about governmental integrity, corruption, and the scope of purpose it specifically says to protect against undue influence, which is the concerns that were outlined by the Hazleton Court, by the Providence Tool Court, and I think we need to let New Mexico make those rulings on what is permissible and what is not. There is nothing in statute, in regulation, anywhere that would have alerted any of the parties in this case that the type of arrangement entered into was improper, and I think that's important because we create statute. What does your client do? Is your client a lobbyist, or is your client a real estate broker? Because I understood the latter, not the former. He is a real estate broker, Your Honor. All right, so is this a traditional real estate brokerage agreement? Because I don't see anything traditionally or classically real estate broker contingent fee here. The only thing traditional about it is that he was assisting Wagner in developing real estate property. That was what he was originally hired to do. This IRB arrangement was a separate agreement than his other consulting arrangements, but he was primarily there because of his connections with real estate development, because of his experience in real estate development. In the sense of securing industrial revenue bonds for a real estate project, that is why his services in this case were retained, but as far as being a traditional brokerage situation, I don't think that's exactly what we have here. Going along, what I was saying was that essentially in this case, there really hasn't ever been any allegation of impropriety, of misuse by anybody. There hasn't been any allegation of attempting to use undue influence. I think under the constraints of the contract and the way everything transpired, there was no reason to find that this type of contract was automatically void as a matter of public policy, and there was no provision in New Mexico law that would have alerted the parties to that. Let me ask you, sorry to interrupt you, but let's assume that we agree with everything you have said thus far. We know that the district court found as a matter of fact that there was no such agreement, so if we were to reverse, wouldn't the issue of the 18% contingency fee on the breach of contract be prudentially moved, since we already know that the district court as the fact finder has found that there was no such agreement? Thank you, your honor. That is the second issue on appeal for us, is the district court did not hear evidence related to the breach of contract claim. We did not go to trial on our breach of contract claim because it had been specifically dismissed, and that was not our strategy or our intent at that time. Your closing argument specifically relied on all of the evidence about the contingency fee. I mean, you all had argued this, so what additional evidence would you have elicited that you haven't elicited in order to convince us that it's not prudentially moved? Your honor, I think we just would have approached the strategy different. I think we would have discussed calling different witnesses. I think we might have approached it. Who? Off the top of my head, your honor, I'm not sure exactly who we would have called, but we may have cross-examined more of the individuals that were actually there when the agreement came to light. We may have called more individuals who were familiar with the discussions leading up to the agreement. I just think that the goal was to provide the district court with various benchmarks that she could have used to calculate the appropriate measure of restitution in that case, and our goal was not... Go ahead. Sorry. Am I reading the briefs correctly here for the proposition that if, hypothetically, if we rule against you on issues one and two, that issue three drops out and it becomes not my point? Am I reading the briefs correctly that we don't have to decide issue three if we decide one and two in the reverse department? By issue three, are you referring to the cross-appeal or are you referring to... I am referring, yes, I'm referring to the question of whether the district court abuses discretion by basing the restitution award on the third party similarity. I believe that's correct, Your Honor. I think if we don't win the first issue on... Well, let me just say, with respect to... There's a couple of problems with the district court's analysis with respect to unjust enrichment, and I think that, one, it used its prior ruling to preclude us from considering certain evidence. I don't think the court is precluded from considering various types of evidence because it found that contingency fees in all contexts are void as a matter of public policy. We had intended to give the district court certain benchmarks to compare what the proper value was to assign to Mr. McCall's services in this case. That included looking at percentages that Wagner paid its other tax consultants, and she flat out refused to consider that evidence because she found that, because it was based on a contingency fee, it was void as a matter of public policy. I still think the court could have used, given the broad discretion she has for unjust enrichment and equitable claims, could have used those as benchmarks to assign a value to Mr. McCall's services. So not necessarily to answer your question. I don't think that if you rule against us on the breach of contract claim on our first issue, that the remaining claims are necessarily disposed of. Thank you. And with that, I would request leave to reserve the rest of my time for rebuttal. Thank you, counsel. Let's hear from Wagner. Ms. Heafey? Thank you, your honor. May it please the court. My name is Elizabeth Heafey, and I'm here today to represent Wagner Equipment Company, which is the AFL-E and in this case, Midway sought a contingency fee valued at more than three million dollars for lobbying services it performed on a part-time basis over a period of approximately three months. Because Ms. Jones' presentation covered a lot of the background about the basic information about the alleged agreement between the parties, I thought that I would focus on a couple of the First, with respect to Judge Lucero's question about whether the public policy here drives from statute, common law, or some other source, I think that the answer to that is that the statute and common law and the interplay between those sources of law are all very important to Let's assume without deciding that the legislature has the power to declare what the public policy of New Mexico is, and let us further assume that the court had declared previously the public policy in a broader sense that could include this situation before us. The question to you is, by narrowing the scope of public policy to the statutory criteria that are present here, under the kind of general principle of inclusio, neocist, exclusio, ulterior, and those general principles, wouldn't that cut against you? Wouldn't the legislature have essentially repudiated the earlier doctrine of public policy, the earlier public policy doctrines, and narrowed them in the manner that it did, that excludes this case? Yes, thank you, Your Honor. I do not believe that that's how the doctrine of statutory abrogation works in New Mexico. Under the Sims v. Sims case, which is cited in the brief, the New Mexico Supreme Court stated that they adopt a strict rule that the common law must be expressly abrogated by a statute, because when determining the meaning of a statute, courts will often construe the language in light of the pre-existing common law. So in other words, New Mexico tries to reconcile a statute with the existing common law unless the statute has explicitly stated that the common law rule is being abrogated. Here, there's nothing inherently inconsistent with having a piece of legislation that explicitly codifies that contingency fees are prohibited for lobbying at the state level. There's nothing inherently about that that means that you couldn't have a common law rule that extends that doctrine more expansively to the local government level. And that's especially true because you would be reading a lot into legislative silence to assume that just because the statute at issue here explicitly refers to the state government level, that that necessarily implies that counties were intentionally excluded. The statute 2-11-8 organizationally is in the part of the New Mexico Code dealing with the legislature. The New Mexico state legislature under the New Mexico Constitution is the principal body tasked with legislative functions. It makes sense that there's a reason why this statute might have focused when it codified this. Why was the statute necessary if the New Mexico common law already prohibited that which was addressed by statute? Your Honor, the New Mexico Supreme Court has observed, this would be in the Berlangeri case, that the New Mexico legislature is free to codify aspects of common law if it wishes to do so. I mean the Armijo case provides another example. The New Mexico Supreme Court in that case found that it was well established in common law that governmental officials shouldn't engage in transactions that have a conflict of interest. But the statute in that case happened to apply just to certain categories of government officials and not explicitly to the official involved in that case who worked for the, who was an official of the land grant entity. Do we know whether the county ever considered regulating this type of lobbying or brokerage contracts however you want to define it? Is there anything in the local government regulations that bears on communications between private parties and public officials? The Bernalillo County ordinance, the code of conduct primarily focuses on the government officials themselves and contractors that deal with them. It does not explicitly contain significant provisions about third parties interacting with the government as for the purposes of lobbying. I don't know and I don't know that the record shows whether Bernalillo County has ever considered adopting this kind of ordinance but it is Wagner's position that the New Mexico law requires that local governments, which counties and municipalities not pass the ordinance that are inconsistent with the public policy of New Mexico and it's our standing as it were. I mean my question isn't about standing but does it have standing to raise this New Mexico public policy concern? After all it doesn't impact New Mexico and there's no allegation here that there was any any impropriety by county officials. That's not even involved in this case. It just strikes me a bit odd that it's Wagner that's waving the New Mexico public policy flag here rather than New Mexico or Bernalillo County or anyone intervening on their behalf. Your honor, I think that that is what the providence tool in its progeny and Marshall and on several of the cases Hazleton were often looking at situations where it is a dispute between two private parties, a contract wherein one party was enlisted to perform lobbying services or similar services for another party and the court, the supreme court in those cases found that that agreement between the two private parties was threatened the integrity of governmental processes and therefore would invalidate even the contract between the two private parties. So we're drawing on that history and that precedent because that's what those cases were contemplating. I think that under the public policy doctrine and in general I understand what your honor is saying that this public policy happens to do with governmental integrity so maybe it's somewhat different than other kinds of public policy arguments but I do think that there it is established under the common law that this is the type of policy where a agreement between private parties can be invalidated and that's exactly what what happened in those supreme court precedents. If I'm not being abusive of my time here, just one other question. Did the district court ever make an express finding that this contingent fee so-called contingent fee contract did not exist or that it did exist? Your honor, what the court found at the summary judgment level is that your question? Yes, at the summary judgment level, Wagner assumed for the sake of argument that the parties had entered into the contingency argument. Wagner reserved his position which it took at trial that there was actually no such agreement but what Wagner's position was at the summary judgment stage was even if the parties had entered into the contingency fee agreement that that agreement would be invalid. So there was no need at the summary judgment stage for the district court to consider whether that had been entered. Go ahead. No, that's all right. So I'm just going to observe that it would move out the case if the agreement didn't exist. Yes, your honor. But please answer Bacarach's question. Mine was just an observation, please. Well, thank you, Judge Lucero, and I actually want to follow up on exactly Judge Lucero's point. So as I understand it, on the quantum merit restitution issue that would have been an that as a factual matter that Mr. Wagner and Mr. McCall did not ever reach an agreement on a contingency fee. And so I want to focus, assuming my memory is right, on your alternative ground for affirmance based on that. Now, I've got several problems with it. One is, apart from what Ms. Jones had said, the existence of a breach of contract is a jury issue. And so if we were to find that to reject your argument on public policy, it would be a jury issue as opposed to a judge decision. That's, if you forgive me for asking a compact question, that's one of my problems. And then the second distinct problem is it seems to be mixing apples and oranges because you have a credibility determination that was made on the restitution issue. And it just seems awfully counterintuitive. I don't know how you mechanically do it to say that the summary judgment issue in which credibility is not on the table is moot because later, with the benefit of testimony and credibility determinations, we know what would have been the result after appraisal of everybody's credibility. So how do I overcome those two problems on your alternative ground? Thank you, Your Honor. The judge's findings of fact on credibility informed specifically her determination that there wasn't a meeting of the minds and the conclusions of law. And one reason that that issue had come up was because the Midway had contended that you could look at what the parties actually agreed with regard to whether this was a fair price, more or less, the services, and that that could inform the determination on quantum merit. I understand that Midway's objection to that is that the meeting of the minds or mutual assent is perhaps different in the breach of contract context than in the quantum merit context. I agree that there is still an issue with regard to that, since that wasn't the basis of the motion for partial summary judgment, that the breach of contract claim was not at issue in the trial court. But I would suggest that there is still an issue, as Your Honor said earlier, with the credential mootness that I don't know how the mutual assent is actually factually different if the district court already found that there was not credibility to the allegation that there had been a meeting of the minds. I don't know how a different result could be reached on remand that would not be inconsistent there. So that was our argument, Your Honor. Thank you. I did just want to address, finally, Midway's argument that there has to be, there would have to be an examination of the circumstances of the particular contingency fee agreement and a showing that there was something improper or an improper influence in order to invalidate the contingency fee agreement here. Wagner disagrees with Midway's position that the was along the lines of a typical commission or something that has an analog, where you could just say that this was a typical brokerage fee or something like that, because lobbying has no, not governmental analog. In addition, the huge size of the fee... Yes, Your Honor, I'm out. Your thought? Yes. In the Ingalls v. Perkins case, the court acknowledged that the size of the fee is something that goes to whether there's a irregularity. And here we pointed out that there's a large size to the fee. In addition, Midway had only performed one other agreement like this, and in that case, it was a significantly lower fee because it did not require his time and experience with government officials. Thank you, counsel. Thank you. Ms. Stone, do you have some rebuttal left? Thank you, Your Honor. Just briefly, with respect to the size of the fee, there's been, that's been heavily disputed. Wagner thinks that the fee would be a lot less. We think it would be more, so that's a disputed issue. So I don't think we can rely on that, but along those lines, I think that just clarifies that there is no clear rule in New Mexico about public policy, about just the nature of the contingency fee being void. If you're going to invalidate a contract, which New Mexico has a high paramount preference for freedom to contract, the rule has to be clear. It can't be, well, maybe this, it falls under this Kalamazoo scheme, maybe this statute prohibits it. It's not clear that New Mexico would find that this type of policy, and I think that is dispositive of the issue. I also want to point out there is an extensive statutory scheme in New Mexico that deals with this type of issue. We first have the municipal home rule in our constitution that has a preference for local government. Combine that with our Government of Conduct Act, which specifically allows counties such as Bernalillo to regulate its own activities, and then you have an extensive code of conduct from Bernalillo County, and I realize I'm out of time, but I just may finish my thought. We have plenty of regulation at the local level to govern the types of concerns that were outlined by the Hazleton courts. I believe we should defer to the legislature on this issue and find that there was no express violation of public policy by this contract. Thank you.